HAWKINS, Judge.
 

 Defendant is under conviction for murder growing out of the killing of her husband, Louis Broussard, by shooting him with a pistol. Punishment is 20 years in the penitentiary.
 

 Defendant and deceased had been married since December, 1922, residing part of the time in Fort Worth and part of the time in Dallas. The homicide occurred in Fort Worth at an apartment house where defendant and deceased and defendant’s mother were living at the time. No one witnessed the shooting save defendant and her mother. Deceased’s body was found in the hall just outside the apartment door and at the head of the stairway. Just across the hall Mr. and Mrs. West occupied rooms and immediately under the apartment occupied by defendant and her husband was a room occupied by Miss Sneiderman. It was the State’s theory that deceased had told defendant he did not care to live with her longer because she was not living the kind of life that she should.live, in that she was making dates with men and had been disloyal in many ways to deceased. Defendant’s contention was that she killed her husband in self-defense. She testified and introduced witnesses to show that he had heaped indignities upon her, had tried to compel carnal relations in an unnatural way, had on several occasions assaulted her, and that immediately before she killed him had called her a whore and knocked her down; that while in a dazed condition by reason of such language and blow she obtained a pistol from her trunk and shot him.
 

 Bills of exception numbers one and two are not briefed by defendant, but we have examined them and find they can not be considered. One relation to alleged prejudice on the part of a juror who served in the case, the other to alleged misconduct on the part of the jury under a claim that they reached a verdict by adding the number of years each juror desired to assess as a punishment and dividing it by twelve. Evidence was heard upon both matters. The result of the investigation is stated in the qualifications to the respective bills, and justified the court in not sustaining either allegation. Even if this were not true the bills could not be consider
 
 *624
 
 ed because they were not filed until long after the adjournment of the trial term of court. It has been the uniform holding of this court that bills complaining of such matters must be filed within term time. Branch’s Ann. P. C. § 572; Fowler v. State, 89 Texas Crim. Rep. 623, 232 S. W. 515; Salizar v. State, 88 Texas Crim. Rep. 209, 225 S. W. 528.
 

 In bills three and five complaint is made because the state was permitted to prove by Dr. Withers that when he examined defendant at the jail a short time after the shooting she appeared quiet and not laboring under excitement. The objection' urged was that the observation was too remote from the time of the homicide to make the evidence admissible. We think the objection goes to the weight of the testimony rather than to its admissibility. The defendant claimed to have been dazed by the blow struck her by deceased and the language used by him. It was only a short time after the. killing when the examination and observations were made upon which the doctor based his statement.
 

 Bills 8, 9 and 10 relate to similar matters and may be -discussed together. The defendant was twenty-eight years of age at the time of the trial. She had experienced a checkered matrimonial career. Deceased was her fifth husband. Her first husband was named Good-son ; he left her two months after marriage. She then married Sampson, lived with him a year, then divorced him. Her next husband was Renfro. She lived with him two years, then divorced him. Her next matrimonial venture was with one Blessing, from whom she secured a divorce in June, 1922, and in December of the same year married Broussard, the deceased, whom she killed in September, 1923. A witness for the state testified that within three minutes after the shot was fired which killed deceased the defendant said, “I shot the damn s— o— a b-; he called me a whore and I shot him.” Defendant made no claim to this witness that deceased had struck her, but on the trial testified that deceased called her a whore, knocked her down and was coming towards her again when she shot him. In bill number eight complaint is made that State’s counsel asked defendant on cross-examination if Blessing (one of her former husbands) had not told her she was a whore. The bill fails to show what her answer, if any was. Bill number nine shows that she was further asked if Renfro (another husband) upon leaving her had not told her he was leaving because she was a whore and would not live straight. This she answered in the affirmative. She was then asked (Bill 10) if Goodson (still another of her husbands) had not told her the same thing. This she answered in the negative. The objection in each instance was that the State was attempting by such questions to put defendant’s character in issue. The State contends that defendant having testified that deceased’s words and conduct rendered her incapable of cool reflection injected the issue of
 
 *625
 
 manslaughter into the ease, and it became a matter for the jury to determine the state of defendant’s mind at the time of the killing; hence, that it became proper for the state to make the inquiries complained about as bearing upon this issue. The state’s evidence shows that defendant, on occasions, used language familiar to habitues of the underworld, and bestowed carnal favors on men other than her husband. If she was unchaste, and had been called a whore by some of the many former husbands it is less likely that her mind would became inflamed by such language from deceased than would such language addressed to a pure woman who had never before been accused of being such a character. We think the inquiry by the state was pertinent upon the issue suggested. It became so by reason of the peculiar facts revealed from the entire record.- Bibb v. State, 86 Texas Crim. Rep. 112, 215 S. W. 312; Redman v. State, 52 Texas Crim. Rep. 591, - S. W. -; Teague v. State, 67 Texas Crim. Rep. 41, 148 S. W. 1063; Parker v. State, 86 Texas Crim. Rep. 222, 216 S. W. 178.
 

 Bill number 13 complains because the State on cross-examination asked defendant the following question: “Didn’t this man Nichol that worked for the Production Company see you take this man frequently in the different offices at night with the lights out and stay with him for a long time?” to which she answered, “No, I did not.” The question was asked and answered before any objection was interposed, and no request for withdrawal was made. Bill Number 29 recites that over objection the state asked defendant, “If within the last six months the house detective at the Westbrook Hotel did not find you in a rooni undressed with a man, and put you out of the hotel?” which question she answered in the negative. The state suggests that both bills are subject to the defect that they give none of the surrounding facts, and fail to furnish this court with sufficient information to enable us to pass upon the question presented. (Sullivan v. State, 95 Texas Crim. Rep. 527, 254 S. W. 966; Smith v. State,-Texas Crim. Rep. -, 255 S. W. 617.) The bills appear to be subject to the defect urged. Bill number 28 includes a colloquy between the court and counsel covering more than two pages. This has no place in the bill. When we go to the record it shows that the incidents at the hotel and the Production Company about which inquiry was made of defendant were proven by the State to have occurred. The evidence was admissible upon the issue of manslaughter, and the inquiry of defendant about the incidents was permissible. (See discussion of bills 8, 9, and 10).
 

 No error is shown by bill number 18, in which complaint is made because the state asked defendant if Mr. Ely did not tell her in a conversation with him that he had investigated Louis (deceased) and that he could not find that he had a woman, or that he drank whiskey or gambled, which she answered in the negative. The ree
 
 *626
 
 ord shows that Ely was an officer in Dallas. Defendant and her husband lived there for a time. She says she suspected her husband of having another woman, and in company with a Mrs. Sadler was watching him. Ely came up to them and inquired what they were doing, and a conversation in which the three took part was had about deceased. This meeting with Ely was first introduced by defendant herself on direct examination. Ely testified that after. she made the complaints against her husband witness told her he would investigate the matter and report to her the following night, which he did telling her then in substance there was no foundation for her charges; it was with reference to this report from Ely defendant was asked about, which she denied and Ely affirmed. The conversation having «been adverted to in the first instance by defendant all of the conversations upon the same subject because admissible under Article 811, C. C. P. (See authorities collatéd in notes under said article in Vernon’s Cr. St. Vol. 2. Bills number 16, 45, 49 and 50 relate to this same matter and present no error.
 

 (Bill 20) The statement of facts, and the qualification to the bill, shows that defendant while testifying in her own behalf swore that she and deceased had been married by a Baptist minister in the city of Fort Worth; that she did not know where the minister lived and had never been to his church until deceased carried her there for the marriage ceremony. As one of the indignities toward her by deceased she claimed upon the witness stand that he was a Catholic, and would not permit her to read her Bible, but had taken it away from her and thrown it at her across the room. The complaint in this bill is because on cross-examination counsel for the state called her attention to the fact that she and deceased had been married by a protestant minister, and asked her if she did not know that Catholics were not married by protestant ministers, and further if she had not said in her testimony that her husband was a Catholic in the hope that some man on the jury might be prejudiced against Catholics and in that way she would derive some benefit from the statement. Defendant answered the question in the negative. The objection urged was that the question was argumentative. In view of defendant’s testimony shown from the statement of facts and the qualification of the learned trial judge to the bill we find the question propounded not such as would call for a reversal.
 

 Bills, 27, 28, 40, 41, 42, 43, 48 and 54 are either entirely in questions and answers without any certificate from the trial court directing them to be prepared in such form, or they consist of long colloquies between counsel and the court relative to the propriety of admitting “or excluding evidence. The bills can not be considered in the condition in which they appear in the record. So prepared they do not comply with Article 846, C. C. P. Many authorities
 
 *627
 
 condemning bills in this form will be found collated in Childers v. State, 92 Texas Crim. Rep. 215, 241 S. W. 1049. See also Taylor v. State, Texas Crim. Rep., 265 S. W. 152.
 

 (Bill 30) Objection was interposed to a question asked by the State of the witness Miss Sneiderman, if on the morning of the killing she “heard any noise up there that sounded like a fight, like somebody might be knocking somebody down,” the objection being that it called for a conclusion of the witness. This bill, like many others we find in the record, is so meager that it gives little or no information as to what the inquiry was really about, and might be dismissed from consideration on that account. The statement of facts discloses that Miss Sneiderman occupied a room immediately under that in which defendant and .her mother claimed a fight had occurred immediately preceding the killing in which they averred that deceased knocked defendant down. The building was a frame structure with ordinary floors and walls. Miss Sneiderman testified that at the time the shooting occurred she was sitting in her room downstairs; that although she could hear people walking on the floor above her when they were moving in the room just over her that she heard no noise or disturbance of any kind before the shot was fired. It was in this connection she said she had heard no noise which indicated that somebody might be knocking someone down. The bill presents no such error as would demand a reversal.
 

 Bills 31 and 32 complain because officers were permitted to testify that shortly after the killing defendant appeared to. be perfectly cool and calm, the objection being that it was only the opinion of the witnesses. The officers were phoned for immediately after the killing and went promptly to the place, only four blocks distant. The body of deceased was still in the hall where it had fallen. The observations of defendant by the witnesses were made at that time. In view of her evidence that she was dazed and excited, their testimony to the effect that her appearance indicated a different state of mind was properly received as a short-hand rendition of the facts. Littleton v. State, 91 Texas Crim. Rep. 205, 239 S. W. 202, and cases therein cited.)
 

 Bill 33 can not be considered. It shows objection to a question propounded by counsel for the State which counsel for defendant seems to have construed as an attack upon the reputation of defendant. The question objected to is “Would you consider her’s good if she lived with him after that?” The question reveals that of itself it is unintelligible. Nothing in the bill shows what preceded it, or in what connection the question was asked, nor relative to whom it was asked. The rule is well known that one complain* ing of a proceeding must so present the matter in the bill that the question may be determined from the bill itself. (Section 207,
 
 *628
 
 Branch’s Ann. P. C.) Bills 22, 23 and 51 are subject to similar defects.
 

 (Bills 35 and 36) The State was well within its rights in offering evidence from Dr. Withers that a short time after the killing he examined defendant while she was in jail and found no bruises, scratches, cuts or abrasions of any kind that would indicate she had been struck or knock down. Defendant and her mother testified that one of the things which caused defendant to shoot deceased was that he had assaulted her with his fists and knocked her down. The testimony of the doctor was pertinent upon that issue.
 

 Bills, 6, 7, 17, 24, 26, 34, 38, 39, 47, 52 and 53 have not been discussed, but all have been examined and considered. None of them in our opinion show error.
 

 We have thought it unnecessary to discuss at length many of the numerous bills found in the record. The greater part of them relate to matters complained of arising upon cross-examination of defendant. Of necessity this must be determined from viewing the ease in its entirety, and especially taking into consideration her evidence on direct examination. We have given attention to all questions which are properly before us for review, and have discovered no errors of sufficient gravity to demand the reversal of the judgment. °
 

 An affirmance is therefore ordered.
 

 .
 
 Affirmed.