### A. Reilly Copeland v. The State.

No. 9508.   Delivered May 5, 1927.

Rehearing granted June 1, 1927.

Rehearing denied State November 30, 1927.

**1.—Libel—Abating Indictment—Properly Refused.**

Where, on a trial for libel, appellant filed a motion to abate the indictment for several reasons assigned, all of which were properly overruled.

**2.—Same—Indictment—Motion to Quash—Properly Overruled.**

Where appellant, charged with libel, moved to quash the indictment on the ground that it should have been drawn under Chapter 2, Art. 1293,

P. C. 1925 (old Art. 1180), relative to slander, instead of under Art. 1269, on libel, this motion was properly overruled.

### 3.—Same—Discharging Negro Juror—No Error Shown.

Where the action of the court in excusing a negro from the jury is brought forward by bill prepared by the court after his refusal of appellant's bill on the same matter, no error is shown in this action of the court.

### 4.—Same—Charge of Court—In Misdemeanor Case—Rule Stated.

In misdemeanor cases one objection to the charge of the court is not sufficient, but appellant must prepare a proper special charge covering the matter complained of and present same to the trial court, at the proper time, to be considered on appeal.

### 5.—Same—Charge of Court—On Penalty—No Error.

Where appellant contends that the court should have charged the jury on the penalty for slander and not for libel. The prosecution being for libel, the penalty for that offense was properly given in charge to the jury. But see opinion on rehearing.

### 6.—Same—Bills of Exceptions in Question and Answer Form—Cannot Be Considered.

Numerous bills of exception appear in this record in question and answer form, and also contain statements and argument between counsel and the trial court, and cannot be considered. See Broussard v. State, 271 S. W. 278, and other cases cited.

#### ON REHEARING.

### 7.—Same—Libel and Slander—Statutes Construed.

On rehearing appellant very earnestly insists that the offense for which he was tried was slander and not libel. On more mature consideration the court is compelled to agree with this contention.

### 8.—Same—Continued.

The offense of libel is defined in Title 16, Chapter 1, of our P. C. of 1925. The marked distinction between libel and slander is that libel must be committed in writing and not orally, while the offense of slander may be committed either orally or in writing, and the latter offense in its elements is limited to a charge of a character imputing a want of chastity against a female.

### 9.—Same—Continued.

The punishment prescribed for the two offenses is entirely different, that for libel being by a fine of not less than one hundred nor more than two thousand dollars, or by imprisonment not exceeding two years, while the punishment for slander is by fine of not less than one hundred nor more than one thousand dollars, and in addition thereto may be imprisoned in jail not exceeding one year, the punishment for libel being the more severe.

### 10.—Same—Statutory Construction—Rule Stated.

Adverting to the principles of law, and statutory enactments which control in determining which of two criminal statutes which apparently denounce the same act controls, it is the rule that preference is to be given

to that statute which *points out a particular act,* and denounces it as a crime over that, the language of which, would embrace the same act, in general terms.   See Art. 5, P. C. 1925; Haley v. State, 63 Ala. 83.

### 11.—Same—Continued.

It is therefore plausible that in enacting Art. 1293 P. C., defining the offense of slander as falsely and maliciously imputing, by oral declaration or otherwise, a want of chastity to a female, the effect of the legislation was to bring it within the purview of the statute last quoted, so that a prosecution for such imputation would fall under the provisions of Arts. 1293 and 1294 supra and not under the libel statute.

### 12.—Same—Continued.

Nor would the fact that the slander imputed also embraced the accusation of the commission of a penal offense, necessarily remove the case from the slander statute; and we now hold that the court erred in submitting the case in his charge under the libel statute, instead of under the slander statute.

### 13.—Same—Evidence—Proof of Charge—Erroneously Rejected.

The case being held to be slander and not libel, the trial court erred in refusing to permit appellant to prove, under the provisions of Art. 1290 supra the truth of the slanderous statement and the general reputation for chastity of the alleged injured female.

### 14.—Same—Continued.

On the other hand, were it admitted that the indictment charged libel, then the court erred in refusing to permit the appellant to prove the truth of the alleged libelous statement.

#### ON REHEARING BY STATE.

### 15.—Same—Statute Construed.

On rehearing the state insists that slander can only be committed by an oral defamation against a female, imputing to her a want of chastity. We cannot agree with this contention, for the statute denouncing the offense includes any act which *orally or otherwise* falsely and maliciously or falsely and wantonly imputes to any female a want of chastity.   See Art. 1293 P. C.

### 16.—Same—Continued.

The slander statute being a special provision, dealing particularly and specifically with acts applying only to one class, the legislature must have therefore intended that its special provisions should control such general provisions embraced in Title 16, Chapter 1, P. C., dealing with libel.   See Bank v. Lee, 250 S. W. 315.

### 17.—Same—Indictment—Insufficient.

Where an indictment attempts to charge a defamatory statement constituting an offense against the penal laws, such indictment must contain an averment of the elements which constitute such penal offense, and a general allegation which merely names the offense is not sufficient.

Appeal from a conviction in the County Court of McLennan County.   Tried below before the Hon. James R. Jenkins, Judge.

Appeal from a conviction for libel, penalty a fine of $1,000.
The opinion states the case.

*W. L. Eason* and *Nat Harris* of Waco, for appellant.

*Sam D. Stinson* State's Attorney, and *Robert M. Lyles*
Assistant State's Attorney, for the State.

BAKER, JUDGE.—The appellant was convicted in the County
Court of McLennan County for the offense of libel, and his
punishment assessed at a fine of $1,000.

The indictment is based upon Art. 1269, 1925 Penal Code (Art.
1151 of the old code), and charges that the appellant "did then
and there, with intent to injure Miss Adelaide Hague, unlaw-
fully and maliciously make, write, print, publish and circulate
a malicious statement of and concerning the said Miss Adelaide
Hague and affecting the reputation of the said Miss Adelaide
Hague, to the tenor following:

"* * * 'Is it true that a certain Waco lady (meaning Mrs. J.
H. Hutcherson) called in a former chief of police (meaning for-
mer Chief of Police Guy McNamara), who took the city nurse
(meaning Miss Adelaide Hague) from your department (mean-
ing the City Health Department of the City of Waco) and put
her (Miss Adelaide Hague) under his (meaning the said Guy
McNamara) probation due to adultery between you (meaning
Jim Tinsley) and her (meaning Miss Adelaide Hague) ?

" 'Is this woman (meaning Miss Adelaide Hague) still in your
(meaning Jim Tinsley's) department? Do you (meaning Jim
Tinsley) mean to announce for office in February? I'll (mean-
ing A. Reilly Copeland) make no public statement unless you
(meaning Jim Tinsley) ignore this letter altogether or explain
in person the matters involved, which are of common report.
Sincerely,                                        A. Reilly Copeland.'

("And by the expression: 'Is it true that a certain Waco lady
called in a former chief of police, who took the city nurse from
your department and put her under his probation due to adul-
tery between you and her,' the said A. Reilly Copeland meant
that the said Miss Adelaide Hague had committed adultery with
Jim Tinsley.")

The appellant presented a motion to abate the indictment
herein, alleging that he was a minister of the gospel and inter-
ested in the public welfare, and that the District Judge who
presided at the time when the indictment was returned by the
grand jury, the corporation judge of the city of Waco, one

J. W. Tinsley, and the city commissioners belonged to what is known as the Ku Klux Klan, and, together with other members of said Klan, had conspired to indict the appellant for the purpose of destroying his usefulness as a citizen and as a pastor. Complaint is also made, by the motion to abate, to the formation of the jury commission which selected the grand jury, and to the charge of the District Judge to the grand jury, and to other matters pertaining thereto, which, appellant contends, render the indictment invalid. After a careful examination of the motion, we are of the opinion that, as presented, no error is shown in the ruling of the court thereon.

Bills of exception Nos. 11 to 17, inclusive, complain of the action of the court in refusing to quash the indictment. These bills, as presented, show no error in the ruling of the court thereon.

Bill No. 18 complains of the action of the court in overruling appellant's motion to quash, the contention being that the indictment should have been drawn under Chapter 2, Art. 1293, 1925 Penal Code (Art. 1180 of the old code), relative to slander, instead of Art. 1269, supra, on libel. There is no merit in this contention.

Bill No. 19 complains of the action of the court in discharging from service on the jury one W. M. Jackson, a negro. The trial court refused the bill as presented by appellant, and the bill, as prepared by the court on this point, shows no injury to the appellant by reason of the ruling of the court thereon.

There are several bills of exception in the record complaining, in various forms and ways, of the court's charge to the jury, but the record fails to show any special charges presented by appellant covering the objections raised to the court's charge. This being a misdemeanor, it devolves upon appellant to prepare a proper special charge covering the matters complained of and present same to the trial court at the proper time before this court, under the law, would be authorized to consider said objections.

Bill No. 24 complains of the charge given by the court on the penalty for libel and insists that the court should have charged the jury, in lieu thereof, the law as to the penalty for slander. What we have said relative to bill No. 18 is applicable to this bill.

Bills Nos. 34, 35, 36, 37 and 38 are in question and answer form and also contain statements and argument between counsel and the trial court. For this reason, attorneys for the state object to the consideration of these bills by the court, which contention is well taken, and under the law we are precluded

from considering same by reason of the form in which they are presented. Broussard v. State, 271 S. W. 385; Robbins v. State, 272 S. W. 175; Panyon v. State, 275 S. W. 1076, and other authorities too numerous to mention.

There are six or eight bills of exception to the argument of the County Attorney. We have examined these bills and deem it unnecessary to go into a detailed discussion thereof. Suffice to say that these bills, as presented, are not such, in our opinion, as would require a reversal of the case.

After a careful examination of the entire record, we are unable to reach the conclusion that the record, as presented, shows any reversible error, and the judgment of the trial court is therefore affirmed.

*Affirmed.*

The foregoing opinion by the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

### ON MOTION FOR REHEARING.

MORROW, PRESIDING JUDGE.—In his motion for rehearing appellant reiterates the various contentions made on the original hearing. In nearly fifty bills of exceptions and a record containing many pages of typewritten matter, the case is presented in a manner prolix to a degree that precludes the propriety and expediency of discussing in detail all the points made.

The offense of libel has been defined and denounced by statute from the beginning of our judicial history. See Paschal's Digest of the Laws of Texas, Vol. 1, p. 455, Art. 2276. In Art. 2283 it is said: "But no verbal defamation comes within the meaning of the act." The statute on criminal libel has undergone modification, and the present is embraced in Title 16, Chapter 1, P. C. 1925. The phases of the statute which seem applicable to the present inquiry are subdivisions 1 and 2 of Art. 1275, which read as follows:

"The written, printed or published statement, to come within the definition of libel, must convey the idea either:

"That the person to whom it refers has been guilty of some penal offense; or,

"That he has been guilty of some act or omission which, though not a penal offense, is disgraceful to him as a member of society, and the natural consequence of which is to bring him into contempt among honorable persons."

And Sec. 2, Art. 1290, P. C. 1925, from which we quote:

"In the following cases the truth of any statement charged as libel may be shown in justification of the defendant:

"Where it is stated in the libel that a person has been guilty of some penal offense, and the time, place and nature of the offense is specified in the publication."

In 1879 the offense of slander was first defined in the statute. See R. S. 1879, Art. 645; Posey's Texas Criminal Digest of Laws, Secs. 9914 and 9915, and that offense is embraced in Arts. 1293 and 1294, P. C. 1925, which read thus:

"If any person shall, orally or otherwise, falsely and maliciously, or falsely and wantonly, impute to any female in this state, married or unmarried, a want of chastity, he shall be deemed guilty of slander and shall be fined not less than one hundred nor more than one thousand dollars, and may be in addition thereto imprisoned in jail not exceeding one year."

"It shall not be necessary for the state to show that such imputation was false, but the defendant may in justification show the truth of the imputation, and the general reputation for chastity of the female alleged to have been slandered may be inquired into."

The offense of slander has found its way into the criminal law in many of the states, including ours. Ruling Case Law, Vol. 17, p. 461, Sec. 223.

The averments in the indictment are set out in the original opinion, and by innuendo the charge is "That the said A. Reilly Copeland meant that the said Miss Adelaide Hague had committed adultery with Jim Tinsley." The alleged defamatory matter is in writing.

Appellant advances the contention that slander, as defined in our statute, may be committed by either oral or written declarations imputing to a female a want of chastity, and that the language used, namely: "If any person shall orally or otherwise," etc., apparently supports the view mentioned. In Lindsey's case, 18 Tex. Crim. App. 280, the procecution was founded upon an affidavit. The opinion apparently gives sanction to the position that the offense could be committed by the use of defamatory language in writing. The case was reversed, however, because the particular writing was privileged. The criminal forms prepared by Judge Willson, who was long a distinguished member of this court, specifically recognize the efficacy of the statute as supporting a prosecution for slander

based upon defamatory language embraced in a written docu ment. See Willson's Criminal Forms, No. 526, 4th Ed., annotated by J. W. Moffett, in 1912.

In Lagrone's case, 12 Tex. Crim. App. 426, discussing an indictment for slander, the following language was used:

"The offense created by Art. 645 of the Penal Code is of the same nature as the offense of libel, and of the common law offense of oral slander, and also of the common law offense of oral blasphemy. In all of these offenses it is essential to set forth in the indictment the writing or language which constitutes the libel, slander or blasphemy. (2 Bish. Cr. Proc. 783, 787, 807, 123; 1 Bish. Cr. Proc. 530; 2 Whart. Cr. L. 1656; 2 Whart. Proc. 939; Id. 963.) The State of Alabama has a statute creating the offense of defamation, which is similar to our statute of slander. (Code of Ala., Art. 4107.) A form for an indictment under that statute is prescribed in the Code (Form No. 56), which requires that the words spoken, written, etc., shall be substantially set out. (See Haley v. State, 63 Ala. 83.)

"Upon principle and upon authority we conclude that in charging the offense created by Art. 645, Penal Code, the indictment or information is bad unless it sets out, at least substantially, *the language or writing constituting the imputation of a want of chastity.*

Adverting to the principles of law and statutory enactments which control in determining which of two criminal statutes which apparently denounce the same act, it is the rule that preference is to be given to that statute which *points out a particular act* and denounces it as a crime, over that, the language which, would embrace the same act in general terms.

In Art. 5, P. C. 1925, it is declared:

"Each general provision shall be controlled by a special provision on the same subject, if there be a conflict."

It is plausible that in enacting Art. 1293 P. C., establishing the offense of slander and defining that offense as falsely and maliciously imputing, by oral declaration or otherwise, a want of chastity to a female, the effect of the legislation was to bring it within the purview of the statute last quoted, so that a prosecution for such imputation would fall under the provisions of Arts. 1293 and 1294, supra, defining slander, and not under Art. 1275, defining libel. Another construction would have the effect to vest in the prosecuting officers power by charging one whose offense was *slander*, with *libel*, thereby arbitrarily destroying the purpose of the lawmakers to permit the accused to defeat the prosecution by proof of the truth of the alleged

slanderous language. There is a substantial difference in the two offenses, not only in the elemental facts and in the defenses named in the statute, but in the penalty also. The penalty for libel is a fine *or* imprisonment, while that prescribed for slander is fine *and* imprisonment. If the appellant's contention that the prosecution in the present instance is controlled by Arts. 1293 and 1294 rather than by the libel law embraced in Title 16, Chapter 1, then the court was in error in instructing the jury touching the penalty to be assessed in the event of a conviction. The instruction authorized the jury to fix a penalty of not less than one hundred nor more than two thousand dollars or by imprisonment in the county jail not exceeding two years, which materially differs, as above stated, from the penalty which the law authorizes for the offense of slander. Exceptions were duly reserved to the action of the court with reference to the instruction touching the penalty.

The charge of the court appears to be framed upon the theory that the alleged libelous matter charged against the alleged injured party was a penal offense. In submitting the case to the jury the court told them, after some preliminary statements, that if the letter in question, in its natural consequences, affected the reputation of the party named by conveying the idea that *she was guilty* of the penal offense of adultery, a conviction should result. He also said:

"You are further charged that adultery is a penal offense against the laws of the state."

These charges were made the subject of exception and are criticized on many grounds upon this appeal, notably upon the ground that in the averments of the indictment and in the letter itself there are lacking the elements of the penal offense of adultery, in many particulars, among others, the absence of averment that one of the parties were married. The indictment is deemed sufficient in its averments to impute to the woman mentioned a want of chastity. It does not, of course, embrace the elements of the statutory offense of adultery. The instruction was error.

Appellant complains of the refusal of the court to hear evidence touching the truth of the matters embraced in the language used and as charged in the indictment. Upon the original hearing we were impressed with the view that the bill of exceptions upon this subject was so informal as to preclude its consideration. Upon a more mature reflection, however, we are of the opinion that while it is informal in some respects, it is such as to demand consideration. From the bill it appears that the

witness, Guy McNamara, while upon the stand in behalf of the appellant, was asked if while chief of police of the City of Waco he was called to the home of Mrs. Hutcherson, and upon his giving an affirmative reply, he was asked to tell the jury just who that call came from and to relate the entire transaction in his own way. Objection was addressed to this question, and the court retired the jury and heard argument upon the matter. After hearing the argument, the court announced that he would not admit the testimony. Appellant at the time made known to the court that the proffered testimony was to prove the truth of the matters contained in the alleged libelous statement, and reserved an exception to the court's ruling. The court approved the bill without qualification. In the main, the bill is in narrative form and makes it perfectly plain that the appellant, with the witness duly sworn upon the stand, offered to prove and could have proved the truth of the statements in the alleged slanderous matter, and the fact that the court and counsel for the state regarded the law as inhibiting such proof. Ordinarily a bill of exceptions complaining of the exclusion of evidence should set out the evidence, at least in substance or in sufficient detail to enable the reviewing court to understand the ruling and to appraise the merits of the complaint. The court in the present instance was specifically informed that the testimony of the witness would be to the effect that the things stated in the writing were true—that is, that it was the truth that the persons mentioned in the indictment had engaged in illicit relations. Construed in the light of the averments in the indictment, the conclusion is unescapable that the appellant's claim to be able to prove the truth of the alleged slanderous matter demanded the privilege to do so given him under the statute above mentioned.

Inasmuch as the court, in his instructions to the jury, treated the prosecution as coming within the purview of that part of Art. 1275 which declares as libelous a statement conveying the idea that the accused was guilty of a penal offense, he should have given the appellant the benefit of the provisions of Art. 1290, supra, which declares that where it is stated in the libel that a person has been guilty of some *penal* offense, and the time, place and nature of the offense is specified, the truth of the matter contained in the alleged libelous statement may be shown in justification of the accused.

The opinion is expressed that the offense charged is "slander," and appellant should have been tried in accord with the statute upon that subject as declared in Arts. 1293 and 1294, which

are quoted above. However, if the prosecution may be maintained under Art. 1275, supra, denouncing the offense of libel, the conduct of the trial in which the jury was informed that the indictment charged a penal offense, renders it improper for the court to refuse to receive evidence of the truth of the alleged libelous statement.

For the reasons pointed out, the motion for rehearing is granted, the affirmance is set aside, the judgment of the trial court is reversed and the cause remanded.

*Reversed and remanded.*

### ON MOTION FOR REHEARING BY STATE.

MARTIN, JUDGE.—It is vigorously insisted by the state on motion for rehearing that the offense of slander cannot be committed by the use of defamatory language in writing. "Slander is the general and original word for all kinds of defamation and at an early day in the history of the common law the term applied to both oral and written defamations of character." 36 C. J. 1145. Until the enactment of our present slander statute, the act therein defined as a crime was not punishable unless it fell within the terms of the then existing libel law. Plainly the class intended to be protected by this statute was the female sex, and the evil sought to be remedied was the lack of such protection under the then existing laws. Having undertaken this task, the legislature used language which we think is broad enough to include any act which "orally or *otherwise*" falsely and maliciously, or falsely and wantonly, imputes to any female a want of chastity. See Art. 1293 P. C. This was legislation designed to protect a special class, and the above construction gives full protection to such class, whereas the construction insisted on by the state falls short of full protection and leaves wholly unexplained the meaning of the broad language "orally or otherwise" used in Art. 1293 P. C., defining slander. Besides there would not seem to be anything unusual in the legislature making the term slander at least as broad as its original common law meaning in its application to the class mentioned.

We further believe that because the slander statute is a special provision, dealing particularly and specifically with acts applying only to one class, it will control the general libel law in effect at the time of its passage in so far as the act made penal in Art. 1293 defining slander may be included within the general terms of the libel law. The legislature carved specially

from an existing general statute and must have therefore intended that its special provisions should control such general provisions embodied in Title 16, Chapter I, P. C., dealing with libel. Art. 5, P. C.; 36 Cyc. 1151; State v. Valentine, 198 S. W. 1009; Bank v. Lee, 250 S. W. 315. It therefore follows necessarily that appellant's alleged criminal act would constitute the offense of slander and not libel, as held by this court in its opinion by Presiding Judge Morrow on motion for rehearing.

Neither of the above questions were expressly decided in the case of Mankins v. State, 41 Tex. Crim. Rep. 662, and it is at best only an authority by inference. Other cases cited by state's counsel are either civil cases of libel and slander or cases outside the state under penal statutes, none of which throw any light on the question in the instant case.

It is insisted that it was neither necessary to allege in the indictment nor give in charge the statutory elements of adultery, and that it was correct for the court to instruct that "adultery is a penal offense." "The living together and carnal intercourse with each other or habitual carnal intercourse with each other without living together of a man and woman when either is married to some other person" is a penal offense. (Art. 499, P. C.) But this statutory definition is not its only meaning. In fact, it could hardly be said to be its commonly accepted meaning. Adultery is defined in Webster's International Dictionary as "The unfaithfulness of a married person to the marriage bed." "Lewdness or unchastity of thought as well as an act forbidden by the Seventh Commandment."

Whatever may be the general rule, these various meanings of the word adultery, we think, made necessary in the instant case such averments in the indictments as would properly charge statutory adultery. For the same reason the court in his charge cannot assume that "adultery is a penal offense," especially so when, as in this case, neither the allegations of the indictment nor the language of the alleged libelous statement contain the elements of statutory adultery, and the jurors are left by the court's charge to interpret its meaning as they see fit.

Believing that all questions discussed in the opinion on motion for rehearing were properly disposed of, the state's motion for rehearing is overruled.

*Overruled.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.