LIZZIE WILLIAMS v. THE STATE.

No. 15360.  Delivered May 25, 1932.
Rehearing Denied June 22, 1932.
Reported in 51 S. W. (2d) 367.

The opinion states the case.

*Evans J. Adkins* and *W. H. Adkins,* both of Brady, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

LATTIMORE, JUDGE. — Conviction for murder; punishment, twenty-five years in the penitentiary.

Condensing the facts, it appears from the standpoint of the state witnesses that appellant had taken a liking for another negro man, apparently younger and more attractive than her husband. Deceased owned his home, the family consisted of deceased, appellant, and a sixteen year old daughter of the latter by a former husband. A neighbor across the street testified that about eleven o'clock on the night of the homicide he saw appellant go into her home. He saw no one with her. Between the time of her going in and that of the shooting, which was about one o'clock at night, this witness said he heard some one "walking over there about four or five times. * * * From the walking they are bound to have had on shoes as I would not have heard them otherwise." This witness further testified that he heard the screen door over at the house of deceased open and slam, but did not see any one. Deceased was sleeping in a bed

outside of his house. When the gun went off, this witness testified that he got up and went to his door and heard some one say, "Baby, call Mr. George. I think Dad is trying to kill himself." The given name of this witness was George. Witness at once dressed himself and went over to deceased's house. He found deceased sitting up in bed, shot in the neck. The shooting was done with a shotgun and made a good-sized hole. The wadding from the gun was in the neck of deceased who spit up some of it shortly before he died. A shotgun was under the bed. Deceased was carried to a hospital, where he died the next day. The above witness testified that when he got over to the place, he asked deceased how it happned, and the latter said he did not know. Appellant was standing near at the time. A doctor testified that after deceased got to the hospital he asked deceased who shot him; that deceased hesitated, and then said he did not know. Later, and after the sheriff of the county reached the hospital, and after being told that it would be impossible for him to recover, deceased said to the sheriff, who testified to this statement as follows: "My wife shot me. I won't lie to you." The sheriff and the doctor who waited on deceased testified that they observed nothing about his person indicating that he had been drinking liquor; that there was no odor of whisky or anything of that kind about him. Another doctor testified to the contrary.

Nothing in the record indicates or suggests animosity toward deceased by any other person, or any likelihood of the shooting being done by any other person than appellant. The fact that at a time when deceased was not certain whether he was going to die he said, in the presence of his wife, and with hesitation to the first doctor who saw him at the hospital, that he did not know who shot him, and that later, when informed that he could not live, he said appellant shot him, would be for reconciliation by the jury. The facts seem sufficient to justify the conclusion of guilt.

We find in the record six bills of exception. Bill No. 1 complains at some length of the admission of the dying declaration. The objections set out cover more than a page of the record, but do not appear to be verified by any statement of the facts which would lead us to conclude that the court erred in overruling same. The second bill of exception also complains of the admission of the dying declaration. The fact that said statement was made an hour or more after the shooting would in nowise affect its admissibility as such dying declaration. The objection to its admission seems rather indefinite.

By two bills of exception complaint is made of testimony showing the age of deceased, the objection being that such testimony would tend to inflame the minds of the jury against appellant, and that it was but the opinion of the witness. The testimony appears material for what it was worth as supporting the state's theory of motive, that is, that a younger and more attractive man had appeared and was making his way with

appellant. Another bill complains of the admission of testimony show-ing that appellant was associating with the younger negro referred to whose name was Scott. We think this testimony admissible. It was shown that on the night of the homicide, and just before appellant came to her home at eleven o'clock at night, she and this negro Scott, and another negro man and woman, were off together somewhere, and that appellant had expressed to a witness who so testified, her liking for Scott.

Bill of exception No. 5 sets out approximately two pages of questions and answers, following which this statement appears: "All of which testimony was objected to by the defendant at the time it was offered upon the following grounds, to-wit," and then a number of objections are set out. Much of the testimony, and many of the questions and answers thus appearing in the bill were not objectionable. Such a bill can not be appraised by us.

The remaining bill of exception complains of the admission of the testimony of a witness who said that he was acquainted with deceased, and that from his appearance and general demurrer it was the opinion of witness that deceased was about fifty-four or fifty-five years of age. This was objected to on the ground that witness had been in the courtroom after the rule had been invoked, and that the statement was but his opinion. The discretion of trial courts in the enforcement of the rule is a matter with which the appellate courts rarely interfere, and only in case of manifested abuse. As to the materiality of this testimony, we have already above stated that we think it was admissible.

Finding no error in the record, the judgment will be affirmed.

*Affirmed.*

### ON MOTION FOR REHEARING.

MORROW, Presiding Judge.—We are unable to agree with the appellant's contention that the declaration of the deceased, Luke Wil-liams, namely, "My wife shot me; I won't lie to you," was not a dying declaration. According to the testimony, as revealed by the bill of excep-tion, Williams was conscious. He was aware of approaching death. He was severely wounded, and had been told by his physician that he could not live. The fact that the statement was made in reply to a question propounded does not render it inadmissible. The propounded question was not a leading one. It was simply, "Luke, who shot you?" The previous statement of the deceased that he did not know who shot him bore upon the credibility of the statement at present under consideration and not upon its admissibility. See Branch's Ann. Tex. P. C., page 1037, citing Hunnicutt v. State, 18 Texas App., 516, 51 Am. Rep., 330, and many other cases.

Bill of exception No. 5 was in question and answer form without any certificate of the trial court permitting it to be so prepared. In C. C. P.,

1925, art. 760, subd. 3, it is said: "Such stenographer's report, when carried into the statement of facts or bills of exception, shall be condensed so as not to contain the questions and answers except where, in the opinion of the judge, such questions and answers may be necessary in order to elucidate the fact or question involved."

This court has uniformly declined to consider such bill of exception unless accompanied by a statement showing that the form of it was approved by the trial judge. See Ainsworth v. State, 105 Texas Crim. Rep., 212, 287 S. W., 250; Byler v. State, 106 Texas Crim. Rep., 570, 294 S. W., 205; McCroy v. State, 96 Texas Crim. Rep., 354, 257 S. W., 566; Broussard v. State, 99 Texas Crim. Rep., 589, 271 S. W., 385; Taylor v. State, 98 Texas Crim. Rep., 185, 265 S. W., 152; Robbins v. State, 100 Texas Crim. Rep., 592, 272 S. W., 175; Williams v. State, 102 Texas Crim. Rep., 648, 279 S. W., 466. We have read the bill, however, and even if we were authorized to consider it, we are of the opinion that it presents no error which would require or justify a reversal of the judgment.

The evidence, as given, is conflicting, but in the light of it and the action of the trial judge in approving the verdict and overruling the motion for new trial this court would not feel justified in declaring the evidence insufficient to support the verdict. We are therefore constrained to overrule the motion for rehearing.

*Overruled.*