### SPENCER JAMAR V. THE STATE.

No. 21554. Delivered April 9, 1941.
Rehearing Denied May 28, 1941.

The opinion states the case.

*F. H. Hammond,* of Burnet, for appellant.

*Carlos C. Ashley,* District Attorney, of Llano, *Thos. C. Ferguson,* Special Prosecutor, of Burnet, and *Lloyd W. Davidson,* State's Attorney, of Austin, for the State, on submission.

KRUEGER, Judge.

The offense is murder; penalty assessed at confinement in the State penitentiary for a term of five years.

The record shows that late in the afternoon of December 8, 1940, appellant and his father-in-law came from San Saba to the town of Burnet. They parked their automobile across the highway from the Heckman Cafe, where appellant's wife was employed as a waitress. In a few minutes they saw the deceased leave the cafe, get into an automobile and drive away. In about an hour he returned with another person and went into the cafe, where he took a seat at the counter and ordered

a cup of coffee. While sitting at the counter drinking the coffee, appellant entered the cafe with a pistol and shot the deceased in the back. The cause for the killing originated in San Saba County, where the deceased lived with his parents. Appellant had been a neighbor to the deceased and his parents for some four or five years. It further appears from the record that appellant's wife was the mother of two children, and that the deceased, who was then a boy about seventeen years of age, became infatuated with her, which led to clandestine meetings of the two. Appellant either had discovered it himself or had been informed of the relationship existing between his wife and the deceased. The father of the deceased had also gained knowledge of this fact and undertook to break it up and avoid serious trouble. He prevailed on his son to leave the community, which he did, and finally came to Burnet and was enrolled in a C. C. C. camp. He had been at said camp for approximately fifteen months at the time he met his untimely death. Appellant's wife came to Burnet and sought employment at the Heckman Cafe. After having secured employment, she returned to her home and advised appellant thereof. On Sunday, the first day of December, with full knowledge of the previous relationship existing between his wife and deceased and well knowing that deceased was at the C. C. C. camp at Burnet, appellant took his wife to Burnet and moved part of her furniture there. About three days later, appellant drove to Burnet at night-time to ascertain, if possible, if his wife had resumed her previous relationship with the deceased. While in Burnet, appellant noticed two cars parked near his wife's apartment, and he claimed that he saw his wife come out of her apartment, get into one of the cars with a man and drive away. On the following Sunday afternoon, accompanied by his father-in-law, appellant came back to Burnet, parked his car across the street from the Heckman Cafe, where his wife was employed as a waitress, and waited for developments. In about an hour, deceased, accompanied by another boy, entered the cafe and ordered some coffee; that while deceased was sitting at the counter drinking a cup of coffee, appellant entered with noon; that he did not hear any conversation between appellant a pistol in his hand and shot the deceased in the back. He immediately arose from his stool and undertook to take the pistol from the appellant, who then fired four more shots, none of which seemed to have taken effect. Other parties interceded and wrenched the empty pistol from the appellant. The deceased was carried to a hospital and an examination made of his

body. It was discovered that one bullet had entered the body below the left shoulder and made its exit near the median line of his breast below the heart.

Appellant presented six bills of exception to the court for his approval. The court declined to approve these bills, stating that they were incorrect. He returned the same to the appellant's counsel and then prepared and filed his own bills of exception.

Bills of Exception Nos. 1, 3 and 6 relate to the same subject and will be disposed of together. By said bills, it is shown that appellant called his father-in-law, Charlie Peterson, as a witness, who testified on direct examination by appellant's counsel, that he recalled when his daughter came to Burnet about the first of December, 1940; that appellant brought her down there; that they left about three o'clock on Sunday after- and his wife with reference to coming to Burnet; whereupon appellant propounded the following question to the witness:

"Did you hear any statement; did the defendant make any statement to you as to whether he wanted her to come down here or as to whether he didn't want her to come down here?"

The State objected to said question on the ground that it was self-serving. The objection was sustained and appellant excepted. It seems that appellant made no statement to the court as to what he expected to prove by the witness or would have proved by the witness had he been permitted to answer the question. In the absence of such a showing, no reversible error is reflected by the bill. However, it occurs to us that if the witness had answered the question, it would have been hearsay and subject to objection by the State. Therefore, we overrule appellant's contention. We think that the case of Cherry v. State, 120 Tex. Cr. R. 500 by analogy supports the opinion here expressed on the subject.

Bill of Exception No. 2 shows that appellant placed his wife on the witness-stand, who testified that about the 7th day of May, 1939, she met the deceased below her home; that he had some letters which he desired to hand to her on that occasion; that appellant saw deceased with the letters and took them away from him; that by reason of the occurrence she and her husband had a misunderstanding; that she and her husband had been separted before this occasion but had become reconciled later on; that about two weeks before the deceased was killed she saw him again out in the road in front of her father's

home; that she and appellant had separated at the time. Thereupon the District Attorney, on cross-examination of the witness, asked her if the separation at that time was due to anything which the deceased had done, to which the witness answered, "He did not have anything to do with that separation." Appellant, by his counsel, objected to the question and answer on the ground that it was new matter gone into by the State, not germane to any direct examination on the part of the appellant, and was an attempt to require the wife to give testimony against her husband. The objections were overruled by the court and appellant excepted. It is obvious from the bill itself that appellant, on the direct examination of his wife, elicited from her the fact that she and her husband had separated, or rather were separated, at the time he took the letters from the possession of the deceased; that they had later become reconciled; that she again separated from her husband and went to the home of her father. The fact that appellant first made inquiry about the separation which took place about two weeks before the deceased was killed, was intended to impress the jury with the idea that the deceased was the cause of that separation. Hence, the State had a right, on cross-examination, to show by the witness that deceased had nothing to do with it.

Bill of Exception No. 4 shows that while appellant's wife was testifying in his behalf and while she was being examined in chief by his counsel, she testified that after the deceased had been inducted in the C. C. C camp, he came home very often on week ends; that she saw him frequently on these visits and went out with him on a number of occasions; that on Sunday night before the killing, she saw the deceased in the Heckman Cafe, and that on the night of the killing, he came in there once and left and then came back the second time, and that was the time he was killed. She was then asked by counsel for the appellant whether or not she and the deceased had arranged a date with one another for that night (meaning the night on which the deceased met his death), to which she replied that they had. The State objected to said question and answer of the witness on the ground that it was not shown that if any such meeting had been arranged the appellant had any knowledge thereof prior to the alleged killing. The court inquired of counsel for appellant if he intended to show knowledge of such fact on the part of appellant, to which he replied that no such showing would be made; whereupon the court sustained the objection on the ground that same could not have had any influence on the defendant's state of mind or

prompted his action in killing the deceased. We think the question presented here is somewhat similar to that raised in the case of Newchurch v. State, 121 S. W. (2d) 998, 135 Tex. Cr. R. 619, decided adversely to appellant's contention. Hence, we overrule the same. See also Berwick v. State, 116 Tex. Cr. R. 508.

Bill of Exception No. 5 reflects the following occurrence: While appellant's wife was testifying on direct examination by his counsel, she gave testimony, among other things, as follows:

"My husband did not beg me not to come to Burnet at that time. He talked to me about it but I wouldn't say it was begging. He made the remark that I was coming down here where Alton was when I told him I was coming to Burnet."

On cross-examination of said witness the State propounded the following questions and elicited the following answers from her:

"Q. On the occasion when you came down here to Burnet to work, who brought you down here? A. My husband.

"Q. Did he know that Alton Bloomer was in the C. C. C. camp out here in Burnet County, at that time? A. Yes, sir.

"Q. Had he known that for fifteen months or longer?"

Appellant objected to the last question on the ground that he had not elicited from his wife on direct examination the matter inquired about by the State; and that to permit the State to propound said question to the witness was going into a new and independent matter not brought out by the defendant on direct examination and was requiring the wife to give testimony against her husband. The court overruled the objection and the witness further testified:

"Q. Did you answer that question, Mrs. Jamar? A. I don't believe I did.

"Q. What is your reply? A. I don't recall whether Alton had been there fifteen months or not, but he knew that Alton was in the C. C. C. camp here and that he had been here a good long while."

There was no issue as to how long the deceased had been enrolled in the C. C. C. camp at Burnet. Appellant himself testified that he knew that the deceased was at the camp and had been there for about fifteen months prior to the time of the

homicide. Therefore, if it should be conceded that the inquiry complained of was not germane to any testimony elicited from her on her examination in chief, it was harmless in view of appellant's admission.

No error having been presented by the record authorizing a reversal of the conviction, the judgment of the trial court is affirmed.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

### ON MOTION FOR REHEARING.

HAWKINS, Presiding Judge.

Appellant calls attention to the fact that the separation between appellant and his wife which was drawn out on direct examination of the wife related to a time some nineteen months before the killing, and that the separation to which the wife referred as existing two or three weeks before the killing was not inquired about on the wife's direct examination.

The statement of facts and bill of exception number two reflect that appellant had proven by his brother-in-law that he had brought about the meeting between his sister (appellant's wife) and deceased on the occasion some two or three weeks before the killing, and that on cross examination of the witness, without objection from appellant, the State elicited that appellant and his wife were then separated and that she was living with her father at the time. The witness further testified without objection:

"Spencer Jamar and his wife had separated a good many times before that. That was just one of the many times that they had been separated in the last two years. I know they had been separated two or three times during the last two years."

After the wife had testified on direct examination about the separation some nineteen months before the killing, the State on cross examination elicited from the wife without objection oh the part of appellant that on the occasion of her meeting deceased two or three weeks before the killing the following:

"My husband and I were then separated. I think we had been separated since the Thursday before. It had been a week on Thursday and that was on Saturday night. We had been separated a few days I am sure."

After the wife so testified counsel for the State asked her: "And the separation that occurred at that time, was that separation a matter that Alton Bloomer, the deceased, had anything to do with?"

No objection was interposed and the bill gives no reason why the question was not objected to. The witness answered: "No, sir, he did not have anything to do with that separation." Not until said answer was given did appellant indicate any objection to the examination, but after the question was answered he then objected to the question and answer. Whether he took a chance on the answer being favorable is only speculative. However, we think his remedy was not by objecting to the question and answer after the answer was before the jury, but should have been by motion to have the evidence withdrawn. No such request was presented to the court. See Johnson v. State, 90 Tex. Cr. R. 229, 234 S. W. 891, and Broussard v. State, 99 Tex. Cr. R. 589, 271 S. W. 385, which hold that error can not be predicated on the admission of evidence, where the objection came after the question was answered, and no motion was made to strike out the answer.

However, we are of opinion if the point had been properly saved, that under the record before us no reversible error would have been reflected from the incident mentioned. Appellant's wife had returned to his home and persuaded him to give his consent for her to accept a position as a waitress in a cafe at Burnet, near which place deceased was in the C. C. C. camp. Although apprehensive that his wife's purpose was to go there in order to renew or continue her relationship with deceased, appellant consented, and himself moved his wife and some of her furniture to Burnet. She immediately renewed her attentions to deceased and had only been working in the cafe one week when the killing occurred. Whether the separation two or three weeks before the killing was caused by deceased or whether it resulted from some other cause does not appear of such serious import, under all the facts here present, to demand a reversal even if the matter complained of was properly before us.

The motion for rehearing is overruled.