JAMES GLENN BOLICK V. STATE

No. 29,419. January 22, 1958.

*Robert H. Stinson, Jr.,* Dallas, for appellant.

*Henry Wade,* Criminal District Attorney, *Charles D. Caba-*

niss, *Robert E. Lyle, A. D. Jim Bowie,* Assistants District Attorney, Dallas, and *Leon Douglas,* State's Attorney, Austin, for the state.

WOODLEY, Judge.

The offense is procuring; the punishment, six months in jail and a fine of $200.

Dallas Police Officers M. H. Brumley and R. H. Winters went to a lounge called the Zebra Room "to see if there was a violation of the laws, such as prostitution, going on at this place." After keeping the place under surveillance for two days they sent Police Officer Brian to the lounge on undercover assignment, while they continued their watch outside.

Officer Brian, posing as a man on vacation, "hung around for a while to see what was happening" and "just generally noticed what was going on in the place." He observed that there was a bar in the place where beer was sold; that appellant was the bar tender; that among several girls who were present was one Rosa who, he noted, left her purse behind the bar. He noticed also that Rosa drank beer which, so far as he could see, she did not pay for.

On the third day he visited the Zebra Room, Officer Brian made the acquaintance of appellant and expressed an interest in Rosa, and appellant told him that "she was available."

The following day, when Officer Brian came to the bar, Rosa was not there. Brian asked appellant where she was, and appellant "said she was gone with another man" * * * "he told me that he could line the girl up, but it would cost something," but there was no mention of a specific price.

Officer Brian left, saying that he would have to go get some money, but would be back, and appellant said that would be fine.

After conferring with his fellow officers, Brian returned to the room, at which time appellant was there and Rosa was sitting on the end of the bar.

Brian and appellant then repaired to a sofa located on the east side of the juke box in the Zebra Room, and talked again about Rosa.

Appellant said "he would obtain her for me," and went toward the bar. He then returned to the couch where he had left Brian and was there joined by Rosa.

Appellant pointed to Brian and said "This is him, the fellow I told you about."

Brian and Rosa then entered into conversation in which Brian asked how much it would cost "for a date of intercourse," and she named her price. He asked "where we would go, and she said that she had been going to the Mexico Hotel." "We decided that we would go" and they walked out the front door of the Zebra Room, but instead of going to the hotel, Rosa was taken to the awaiting officers and appellant was arrested and charged with procuring.

The facts stated are from the testimony of Officers Brian and Brumley. Appellant did not testify and no evidence was offered in his behalf.

The defense of entrapment was submitted to the jury and was rejected.

The statute under which appellant was prosecuted is Art. 525 P.C. which provides in part:

"Whoever shall invite, solicit, procure, allure * * * any female to visit and be at any particular * * * place for the purpose of meeting and having unlawful sexual intercourse with any male person * * * shall be fined not less than fifty nor more than two hundred dollars and be confined in jail not less than one nor more than six months."

The indictment followed the statute. It alleged the particular place which Rosa was procured to visit and be as "To-wit: a certain couch located east of the juke box in the Zebra Room at 2900 McKinney Avenue, City of Dallas, Dallas County, Texas."

We overrule the contention that this description was not sufficiently certain to enable appellant to prepare his defense.

The unusual fact situation is that the girl was in the Zebra Room, as were appellant and Officer Brian, when she was procured to go to another location in the same room for the purpose of meeting Brian and arranging for an act of intercourse with him at a hotel.

The legal question posed is whether the couch east of the juke box in the same room was a "particular place" under the statute above quoted in part. We hold that it was.

Under the terms of Art. 525 P.C., the female may be procured to visit and be "at any particular house, room or place."

In Burge v. State, 96 Texas Cr. Rep. 32, 255 S.W. 754, the particular place alleged was an automobile. This was held sufficient.

In Sanders v. State, 60 Texas Cr. Rep. 34, 129 S.W. 605, the particular place was alleged as "at the town of Dublin, in Erath, County, Texas" and the allegation was held sufficient.

The Sanders case is also authority for the holding that the offense was complete when Rosa was allured or invited and started to the hotel, the place of assignation. See, also, Denman v. State, 77 Texas Cr. Rep. 395, 179 S.W. 120.

That Officer Brian expressed an interest in the particular girl Rosa, and appellant procured her at his request, is not fatal to the conviction. Mayes v. State, 162 Texas Cr. Rep. 105, 282 S.W. 2d 709.

Officer Brian was asked on direct examination why he remained in the Zebra Room the first three days "without making any attempt at this case."

Appellant's objection being overruled, Officer Brian answered: "It was apparent after the first day that there was prostitution going on in the establishment, prostitutes were working out of the establishment."

Appellant moved for mistrial, and excepted when his motion was overruled.

The answer of the witness does not appear to have been responsive to the question. No motion or request to have the answer stricken or the jury instructed to disregard it was made. The answer was not of such prejudicial nature that an instruction from the court to the jury to disregard it could not have cured the claimed error. The trial court did not err in refusing to declare a mistrial because of such answer. Smith v. State, 138 Texas Cr. Rep. 219, 135 S.W. 2d 494; Adams v. State, 158 Texas Cr. Rep. 306, 255 S.W. 2d 513; Johnson v. State, 90 Texas Cr.

Rep. 229, 234 S.W. 891; Jamar v. State, 142 Texas Cr. Rep. 91, 150 S.W. 2d 1031; Huff v. State, 145 Texas Cr. Rep. 82, 165 S.W. 2d 717.

The evidence is sufficient to sustain the conviction and we find no reversible error.

The judgment is affirmed.

DAVIDSON, Judge, dissenting.

In Cooper v. State, 162 Texas Cr. Rep. 624, 288 S.W. 2d 762, a procuring case from Dallas County, my brethren announced the law to be that if a peace officer, for the purpose of instituting a criminal prosecution against a person, induces that person to commit a crime which he had not theretofore contemplated and that person, by reason of such inducement, actually commits the crime, he is guilty of no offense and cannot be prosecuted therefor because he was entrapped by the peace officers into doing so; and that, in law, no crime has been committed.

I thought then, and I think now, that such pronouncement is absolutely indefensible and wholly without legal foundation. My dissenting opinions in that case express my views. As there pointed out, where peace officers entrap one into committing a crime a conviction therefor may be obtained by corroborating the testimony of the officers who, by their acts, become accomplices to the crime committed.

Peace officers entrapping one into committing a crime which would not otherwise have been committed are just as guilty of that crime as is the person entrapped into doing so. Peace officers have no more right to be exempted from violating the law than any other person.

Having announced the rule of law as stated in the Cooper case, the least my brethren could do is to follow and apply it when the facts come under such rule.

In affirming the instant conviction my brethren do one of two things: They either overrule the Cooper case and thereby declare the rule of law announced therein as no longer existing, or they hold the facts, here, insufficient to show that the appellant was entrapped by the policeman into committing the crime of procuring.

While the majority opinion does not expressly so state, the construction to be placed thereon is that the facts are held insufficient, for there is an absence of any suggestion either that the Cooper case is not to be followed or that it is to be overruled.

The opinion contains a statement of the facts which I do not challenge, but there has been omitted therefrom a very important and controlling admission by the state's witness, Policeman Brian. Upon cross-examination he testified:

("Q. Well, now, Mr. Brian, when you say or told a while ago that you asked this Defendant here to get you a girl * * *). A. That's correct.

("Q. —did you have any intention of having sexual intercourse with this Benavides woman?) A. I did not.

("Q. So when you asked him that, you were intending and trying to make a procuring case against this Defendant, when you asked him that?) A. Repeat that again, now.

("Q. Well, sir, you said that you asked him, that you wanted to meet this girl down there, pointed her out to him, didn't you?) A. Yes. Yes, sir, I did.

("Q. And you told this Defendant that you wanted to meet her?) A. That's correct.

("Q. And you didn't have any intention of having any kind of sexual intercourse with her at all, did you?) A. I did not.

("Q. And you knew that if that girl offered to make a date with you, you were going to put her in jail?) A. That's right.

("Q. And so when you told him you wanted to meet her, you did it with the express purpose of trying to make a procuring case against this Defendant, and a prostitution case against this Benavides girl, didn't you?) A. That's correct."

Such is a direct and unequivocal admission by the witness that it was his purpose and motive to act to induce the appellant to commit the crime of procuring in order that he might arrest him for having committed that crime. The policeman was the one who conceived the idea of going to the "Zebra Room" in the guise of a salesman. It was he who first suggested the idea that appellant procure a female to meet him (the officer) at a place

for the purpose of having sexual intercourse. In procuring the female to meet the officer for that purpose, appellant acted at his urging, request, and suggestion and for and in his behalf, thereby making the policeman an accomplice or a co-principal to the crime committed. The entire unlawful enterprise was conceived and brought to fruition by the policeman, but for which it would not have been entered into. To my way of thinking, the officer is just as guilty of any crime committed as is the appellant.

The facts of this case show a more pronounced case of entrapment than those set out in the opinion in the Cooper case. What did my brethren hold in the Cooper case as the law governing such facts? Here is what they said:

"However, if the criminal design originates in the mind of the officer and he induces a person to commit a crime which he would not otherwise have committed except for such inducement, this is entrapment, and in law may constitute a defense to such crime."

In consequence of that statement of the law, the Cooper case was reversed, because the trial court failed to instruct the jury in accordance therewith.

In the instant case the trial court recognized that the Cooper case was applicable and controlling here. He instructed the jury in this case as follows:

"Now, therefore, if you find from the evidence that the intent to commit the particular offense involved, if one was committed, originated in the minds of the officers, and the Defendant was induced to act in a manner in which he would not otherwise have acted, except for such inductment, or if you have a reasonable doubt thereof, you will acquit the Defendant and say by your verdict 'not guilty.' "

By that charge, the trial court recognized as the law the rule announced in the Cooper case.

The only thing wrong with such charge, here, is that there was no issue of fact that warranted submission of such issue to the jury. The facts which the jury were required to find in the charge were undisputed and therefore there was no issue for the jury to determine. There was no occasion, then, for the charge

given here. The fact that the jury found appellant guilty under such charge by no means changes the undisputed evidence.

If the trial court was to follow the law of the Cooper case, as he was endeavoring to do, he should have instructed the jury to return a verdict of not guilty.

But any reversal of this case would not rest, alone, upon the question of entrapment. Other errors are shown by the record.

Suppose, for the sake of argument, that the law of entrapment as announced in the Cooper case is not here applicable for some reason. Then the crime of procuring was committed by the appellant. But how is he shown to be guilty? His guilt is shown by the uncorroborated testimony of the man who conceived and brought about the commission of that crime by his own acts, words, and conduct, but for which the crime could not have been committed. If that man is not an accomplice and equally guilty with the appellant of any offense the latter committed, then I don't know how one can be an accomplice to the commission of a crime by another!

This conviction cannot stand, for it rests upon the uncorroborated testimony of an accomplice.

This brings me to a discussion of the sufficiency of the information:

Appellant insists that "a certain couch located east of the juke box in the Zebra Room at 2900 McKinney Avenue, city of Dallas, Dallas County, Texas" is not a sufficient allegation to constitute a *place*, within the meaning of the procuring statute, Art. 525 P.C.

With that contention I agree. The language of Art. 525 P.C., requires—if it requires anything at all—that the place where the assignation is to be consummated must be such place as that acts of sexual intercourse might be accomplished there, because that statute says that the female must be procured to visit or be at a particular house, room, or place "for the purpose of meeting and having unlawful sexual intercourse with any male person."

The information charged the language of the statute and thereby alleged that the couch was a place where unlawful intercourse might be accomplished.

It cannot be assumed or presumed that a "couch" located "east of the juke box in the Zebra Room" was a place within the meaning of the statute.

If the couch was such a place, in fact, then there should have been some explanatory averments that would show that it was a place where acts of sexual intercourse might be engaged in. There were no explanatory averments.

It is apparent, therefore, that the information was subject to the objection of indefiniteness.

Under the evidence, the couch was not a place within the statute. All the evidence shows that the "Zebra Room" was a place where beer was sold and that it was open to the public for that purpose. Juke boxes were in the room, as well as seats and couches for the use of patrons while drinking beer.

Surely it cannot be said that one of the couches in that room was a place where acts of sexual intercourse would be consummated. That it was not such a place is demonstrated by the fact that the policeman and the alleged prostitute used the couch only as a meeting place where they agreed to meet at another and different place to engage in the acts of sexual intercours. It was never contemplated by them that an act of sexual intercourse should occur at the couch.

So, neither by allegation nor proof was the couch shown to be a place where the parties agreed to meet for the purpose of there engaging in acts of sexual intercourse.

For the reasons stated, I cannot agree to the affirmance of this conviction, and I hereby respectfully dissent.

What I said in the Cooper case in protest of the rule of entrapment which my brethren there promulgated and what I have here again pointed out is done with the hope and desire that they will some day repeal that rule, for it is not only wrong but exceedingly dangerous.

Under that rule of law a peace officer, for the purpose of instituting a criminal prosecution, can induce a person to commit murder, rape, robbery, or any other crime and the person committing any of those crimes would not be guilty thereof or subject to any punishment therefor. Yet the deceased in the murder case would be just as dead, the victim of the rape would

be just as outraged, and the person robbed would be just as much deprived of his property as if the crimes had been committed without the inducement of the peace officer.

To my mind, the idea of placing that kind of power in a peace officer is unthinkable.