Hugh D. WOOD, Appellant,

v.

The STATE of Texas, Appellee.

No. 48982.

Court of Criminal Appeals of Texas.

Dec. 4, 1974.

Rehearing Denied Jan. 8, 1975.

Polk Shelton, II, Austin, for appellant.

Robert O. Smith, Dist. Atty., and C. E. Clover, Jr., Asst. Dist. Atty., Jim D. Vollers, State's Atty., Austin, for the State.

OPINION

DOUGLAS, Judge.

This is an appeal from a conviction for the sale of methamphetamine. The jury assessed the punishment at three years.

Appellant contends that entrapment was shown as a matter of law and that the court should have charged on entrapment. He also contends that the court should have charged that the failure to call a possible witness created a presumption favorable to appellant and unfavorable to the State. Complaint is made that "have you heard" questions propounded to appellant's witnesses were improper. He claims error in the testimony of the probation officer. Lastly, he complains that the court should have given an instruction on extraneous offenses.

We overrule these contentions and affirm.

The indictment charges and the proof shows that on March 15, 1973, appellant sold methamphetamine to Pat Randel. Patrick Allen Randel testified that he was a narcotics agent with the Texas Department of Public Safety; that on March 3 and on March 6, 1973, he saw appellant in Bastrop. On March 14 he called appellant and they agreed to meet in Austin the next day. Their meeting took place as planned at the Patton Motel where Randel had registered under a different name. Agent Regis de Arza was in the room with Randel. Randel gave appellant $510 for a package which was shown to contain three plastic bags containing eight hundred fifty six methamphetamine pills. These plastic bags had been dated and had been previously used for food in a freezer at the lodge of appellant. Agent de Arza testified that the package which contained the pills was delivered by appellant to Randel at Room 12 of the Patton Motel in Austin March 15, 1973, and that Randel paid $510 for the bag of pills.

Glen Howard Harrison, a Texas Department of Public Safety chemist, testified that he received the bag of pills in question. His analysis showed that the pills were methamphetamine, generally referred to as speed. The State rested.

Appellant testified that he operated a fraternal order organization called the Im-

proved Order of Redmen, a lodge in Bastrop where he served drinks and food and where people danced. He testified on direct examination that he got the pills, State's Exhibit No. 1, from Red Andrews in February and that Andrews told him to give them to Randel. He related that Andrews needed $600 so that his lawyer would not "go off his case." "He said that he already owed everybody, and he said that he didn't know nobody else he could get it from, and I had already bought some pills from him before." He related that on March 3 his wife brought Red Andrews and Randel, who was introduced as Pete Rogers, to his house about a mile from the lodge. He related that Randel asked for some pills and appellant said, "Man, no, I don't have any pills." Red then said ·that "Rogers" was all right. Appellant then got his wife's prescription pills and gave him four. He stated that he had never sold pills in his whole life.

He related that a few days later Andrews and Randel came back to Bastrop, and Andrews said, "Let him have a hundred of those pills." Appellant then went home and got the pills and put them on a torn up old fire truck because he did not want to bring them to the club. He told them where they were and,

"  .   .   . So this here Andrews (sic) folded up a fifty dollar bill and a ten, and handed it to Andrews—he handed it to me rolled up. I put it in my shirt pocket.

"They got up and they left, and the next time I heard from him [Randel] was this 15th, and he said he didn't want to come down to Bastrop to get them because he was afraid he couldn't get out of that little town."

Appellant then stated that on March 15 he went to the Patton Motel, gave the pills to, and received $510 from, Randel. After this, Randel called and wanted to buy some $30,000 worth of pills, but he replied that he did not have any. Randel, on recross, testified that he asked to buy that amount

of drugs from appellant, and he replied: "He said he didn't have them, his connection had been busted. I think he said they were hoisting a drug store in South Texas somewhere." Appellant related that he had bought from Andrews fifty pills on one occasion and a hundred on another. On redirect, appellant stated: "I do take some pills when I can get them 'because I work late,' and if I am gambling, that goes on all night." When further questioned about gambling, he testified that he ran the game and took the "rake-off."[1]

■ The above testimony does not show entrapment as a matter of law. Without a lengthy discussion on this subject, see United States v. Russell, 411 U.S. 423, 93 S.Ct. 1637, 36 L.Ed.2d 366. In that case, a government agent furnished an ingredient for the manufacture of methamphetamine to Russell in return for part of the finished product. Russell was later convicted for unlawfully processing and manufacturing methamphetamine and unlawfully selling and delivering that drug. That court held that entrapment was not established as a matter of law.

Did the court err in refusing to charge on entrapment?

■ The appellant contends the charge was required because Andrews was shown to be an ex-convict who had a charge reduced and who was on probation and appellant testified that he let Andrews have $600 for some pills and that he was just getting his money back by delivering them and getting $510 from Randel. He urges that Andrews was a State agent.

Not counting the delivery of four pills to Randel March 3, appellant admitted the sale to him on March 6. Appellant also testified that he had bought pills from Andrews some two times before and that he used pills. There is no evidence that Andrews was acting on behalf of the State if he did sell the pills to appellant.

The evidence shows that the sale in Austin alleged in the indictment did not originate in the mind of Officer Randel. Even if it could be contended that entrapment could have been raised on the first transaction, entrapment would not be shown on the subsequent sale to Randel.

Under appellant's theory he could have complete immunity in any number of cases involving the sale of methamphetamine if an informer had let him have them as security for a loan. We conclude that such is not sound. See United States v. Russell, supra.

■ Appellant next complains of the refusal of the court to charge on the failure of the State to produce Andrews as a witness. Apparently appellant is contending that this fits within the rule of weak circumstantial evidence found in 24 Tex.Jur. 2d, Evidence, Section 745, page 427, where it is written:

"Where the circumstantial evidence relied on by the prosecution is obviously weak, and where the record on appeal affirmatively shows not only that other testimony which would have cast additional light on the facts was available to the prosecution, but also that the prosecution did not introduce such other evidence or satisfactorily account for its failure to do so, the appellate court will treat the case as one showing reasonable doubt of the sufficiency of the evidence to support the conviction."

The appellant announced ready and did not present a motion for a continuance because of the absence of Andrews. Apparently appellant is contending that Andrews would have been a witness to establish entrapment. There is no motion for new trial because Andrews was not present. There is no showing what his testimony would have been had he been present.

No error has been shown.

---

1. Appellant also testified at the penalty stage of the trial that in 1972 he had been convicted for the offenses of aggravated assault upon a police officer and for malicious mischief in Houston.

■ The objection to the charge concerning extraneous offenses is as follows:

"That the charge does not charge on the consideration to be given extraneous offenses by the jury."

This objection does not specify which extraneous offenses he was referring to. The appellant testified to several. He related that he delivered pills to Randel on March 6; that he bought pills from Andrews on two occasions not in question here. He also related that he operated a gambling game and took a "rake-off." He does not indicate how the court should have charged on extraneous offenses. The objection is not specific and does not comply with Article 36.14, Vernon's Ann.C.C. P. See Schneider v. State, Tex.Cr.App., 392 S.W.2d 130. In Cage v. State, 167 Tex.Cr.R. 355, 320 S.W.2d 364, this Court held the objection that the charge did "not meet the requirements of the law regarding extraneous transactions" was not sufficient. No error is shown.

■ Next, appellant complains that error was committed at the penalty stage of the trial when the testimony of Giles Garmon, probation officer of Travis County, admitted that Bastrop had no probation officer except the sheriff and that the statutes prohibited a sheriff from being such an officer.

This evidence should not have been admitted, but it was rendered harmless when appellant elicited testimony that if probation were granted supervision would probably be retained in Travis County.

Giles Garmon testified about the Texas Adult Probation Project which had been set up in five Central Texas counties and about experiments made in probation. Garmon also testified that the purpose of probation was to rehabilitate a person. Also, the following occurred:

"Q. (Mr. Shelton, defense counsel) Okay. If you do that investigation and you find, let's say, like Mr. Wood and you find that maybe it would be best for him to stay here, maybe it would be best for him to report to you, would you tell him to go on back to Bastrop? If you saw it was in his best interest in your job as a probation officer, would you sent that man back to Bastrop just as a matter of law?

"A. (Mr. Garmon) When you look at all the factors and the hypothesis you have put out here, you would keep him here. Our job is to try to help the person prevent himself from getting into trouble again. Whatever it may take to help him do that, that's what we try to do. We have restricted people to Travis County."

Appellant testified that he understood the terms of probation to mean that he could not go into places where they served alcohol or permitted gambling, and "I would have to report to a probation officer and be there and have to get another job and go to work and don't run around with bad characters and support my family." He also testified that he could make probation.

This is not like the case of Alejandro v. State, Tex.Cr.App., 493 S.W.2d 230, which was reversed among other things because of argument to the jury to the effect that probation was ineffective because a probationer would only have to report once a month to a probation officer who had three hundred fifty probationers. Neither is it like Schulz v. State, Tex.Cr.App., 446 S.W.2d 872, relied upon by appellant. That case held that it was not error to exclude testimony of a psychiatrist that it would be better for Schulz to be placed on probation than be sentenced to the Department of Corrections. This case is not like Dawson v. State, Tex.Cr.App., 477 S.W.2d 277, which was reversed on other grounds, but the Court stated that in the event of another trial the probation officer not be allowed to testify that he did not recommend probation.

We conclude in light of all of Garmon's testimony that no reversible error is shown.

■ We perceive no error during the cross-examination of appellant's reputation witnesses. No timely objections were made to the "have you heard" questions asked of these witnesses. Even if timely objections had been made, such questions were proper to determine the knowledge of a witness concerning reputation. See Williams v. State, Tex.Cr.App., 460 S.W.2d 149.

No reversible error is shown. The judgment is affirmed.