**Robert Dean McCLURE, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 57105.**

Court of Criminal Appeals of Texas, Panel No. 1.

Jan. 17, 1979.

Clifford J. Hardwick, Odessa, for appellant.

Before ONION, P. J., and ROBERTS and W. C. DAVIS, JJ.

## OPINION

ONION, Presiding Judge.

This is an appeal from a conviction for the offense of murder; punishment is imprisonment for ninety-nine (99) years.

Appellant previously was convicted of this offense, but the judgment was reversed because of improper argument by the prosecutor. *McClure v. State,* 544 S.W.2d 390 (Tex.Cr.App.1976).

Appellant has presented five grounds of error in which he contends that (1) the court erroneously excluded, at the guilt-innocence phase of the trial, evidence that the deceased (appellant's wife) had been unfaithful to him and (2) the court erroneously excluded, at both the guilt-innocence and punishment phases, the testimony of a court-appointed psychiatrist who had examined appellant after the offense. We agree with both of appellant's contentions and again reverse the judgment.

Our opinion in the prior appeal of this cause states that appellant's testimony, "together with the evidence of other defense witnesses including a psychiatrist, was sufficient to raise the issue of voluntary manslaughter." This statement is not entirely accurate with regard to what transpired at the former trial. We have examined the record in the prior appeal, and it appears that neither the psychiatrist nor three witnesses who testified that they had had sex-

ual intercourse with the deceased while she was married to appellant were allowed to testify before the jury in the former proceeding. Their testimony outside the presence of the jury was included in the record in the prior appeal. It was stipulated in the record in the instant appeal that, had they been allowed to testify, their testimony would have been the same as at the former trial, and that testimony is in the record now before us.

Appellant's testimony raised the issue of voluntary manslaughter, and the court instructed the jury thereon. See V.T.C.A., Penal Code, § 19.04. In support of the defensive theory that he was guilty of only this lesser included offense, appellant offered the testimony of Keith Crowder, Harvey Gordon and Ronnie Davis. Each of these witnesses testified outside of the presence of the jury that he had had sexual intercourse with the deceased while she was married to appellant. Crowder also testified to seeing appellant in a restaurant while Crowder and the deceased were eating breakfast together, and that appellant appeared "real nervous, shaky, upset." Appellant also offered the testimony of Larry Subia. Subia was allowed to testify outside the presence of the jury that the deceased, clad in a bath robe, had answered the door of Davis' apartment at approximately 2 a. m. at a time when she was married to appellant. Appellant also offered to testify—and was allowed to do so only outside the presence of the jury—that one Cindy Haynes had told him that the deceased had had sexual relations with Crowder and Davis. Appellant testified before the jury that he had seen the deceased leave on a "date" with Gordon, and that she had not returned home until 10 a. m. the next day.

Appellant also offered, at both the guilt-innocence and punishment phases of the trial, the testimony of Dr. James Huddleston, a psychiatrist who was appointed by the court to examine appellant. Huddleston's testimony may be summarized as follows:

Appellant was not insane, but suffered from chronic depression. Although there was no indication that appellant experienced hallucinations or delusions, he had, prior to the commission of the offense, experienced "disassociated phenomena." Dr. Huddleston defined disassociated phenomena as "an episode during which an individual feels that either he is not in fact with his surroundings or that he is in some way not quite real in the world." Appellant's insight was limited and he tended toward impulsiveness, but his judgment did not seem to be impaired. Appellant seemed to have "a strong feeling of rejection . . . in the light of the difficulties which he had with his first marriage and the similar types of difficulties occurring apparently within his second marriage." When appellant's wife said good-bye to him and turned to leave [which appellant testified she did immediately before he shot her], her actions could be characterized as a culmination of the rejection appellant had been experiencing for the past three or four years.

V.T.C.A., Penal Code, § 19.06, provides as follows:

"In all prosecutions for murder or voluntary manslaughter, the state or the defendant shall be permitted to offer testimony as to all relevant facts and circumstances surrounding the killing and the previous relationship existing between the accused and the deceased, together with all relevant facts and circumstances going to show the condition of the mind of the accused at the time of the offense." [1]

■ V.T.C.A., Penal Code, § 19.06, provides, as did Article 1257a, V.A.P.C., that the jury be allowed to consider *all* relevant facts and circumstances going to show the condition of the mind of the accused at the time of the homicide. It long has been the rule in this state that evidence such as that offered by appellant to prove his wife's infidelity is admissible as bearing on the accused's state of mind.

"We think the court erred in rejecting the evidence offered by defendant to prove the adulterous intercourse between his wife and the man Stephenson, and that recently before the homicide he had been informed of this fact. This and any other evidence which tended to show that he had reasonable cause to be excited, troubled, distracted and frenzied, that he had knowledge of facts well calculated to destroy his mental equilibrium, to dethrone his reason, to render it improbable that he could and did act with a cool, sedate and deliberate mind in committing the homicide, was in our opinion admissible."

*Burkhard v. State,* 18 Tex.App. 599 (1885).

■ In order for the evidence of the deceased's infidelity to be admissible, appellant was required to show that he had knowledge thereof. See *Jamar v. State,* 142 Tex.Cr.R. 91, 150 S.W.2d 1031 (1941); *Newchurch v. State,* 135 Tex.Cr.R. 619, 121 S.W.2d 998 (1938); *Black v. State,* 82 Tex. Cr.R. 358, 198 S.W. 959 (1917); *Ashley v. State,* 362 S.W.2d 847 (Tex.Cr.App.1962).

■ To prove that he had knowledge of the deceased having had sexual relations with Crowder and Davis, appellant offered to testify that Cindy Haynes had so informed him. The court erred in refusing to allow appellant to testify as to what Haynes had told him on the ground that such testimony would have been hearsay.

"When it is proved that D made a statement to X, with the purpose of showing the probable state of mind thereby induced in X, such as being put on

1. V.T.C.A., Penal Code, § 19.06, replaced Article 1257a, V.A.P.C., which provided as follows:
   "In all prosecutions for felonious homicide the State or the defendant shall be permitted to offer testimony as to all relevant facts and circumstances surrounding the killing and the previous relationship existing between the accused and the deceased, together with all relevant facts and circumstances going to show the condition of the mind of the accused at the time of the homicide, which may be considered by the jury in determining the punishment to be assessed. Provided, however, that in all convictions under this Act and where the punishment assessed by the jury does not exceed five years, the defendant shall have the benefits of the suspended sentence act."

notice or having knowledge, or motive, or to show the information which X had as bearing on the reasonableness or good faith of the subsequent conduct of X, or anxiety, the evidence is not subject to attack as hearsay."

McCormick, Evidence, § 249, pp. 589–90 (2nd ed. 1972).

"Whenever an utterance is offered to evidence the *state of mind* which ensued *in another person* in consequence of the utterance, it is obvious that no assertive or testimonial use is to be made of it, and the utterance is therefore admissible, so far as the hearsay rule is concerned."

6 Wigmore, Evidence, § 1789, p. 314 (Chadbourn rev. 1976). The court should have allowed appellant to testify as to what Cindy Haynes had told him, since that testimony would have shown he had knowledge of the deceased's indiscretions with Crowder and Davis. See *Thompson v. State,* 115 Tex.Cr.R. 337, 29 S.W.2d 343 (1929).

Appellant testified that he saw the deceased go on a date with Gordon and stay out until 10 a. m. the next day, and it may be inferred that he also had knowledge of her indiscretions with Gordon. Since appellant would have shown—had he been allowed to testify as to what Haynes had told him—his knowledge of the deceased's actions with Crowder, Davis and Gordon, the court should have allowed those three witnesses to testify. Appellant did not show that he knew Subia had seen the deceased dressed in a bath robe at Davis' apartment, so the court properly refused to allow Subia to testify.

The error in excluding the testimony of these three witnesses was compounded by the refusal to allow Dr. Huddleston to testify before the jury. His testimony certainly was admissible under V.T.C.A., Penal Code, § 19.06, as going to show appellant's state of mind at the time of the offense. Both Huddleston's testimony and that of the three lay witnesses were relevant to appellant's defensive theory that he was guilty of only voluntary manslaughter, and not murder.

The judgment is reversed and the cause remanded.