George **KHOURY**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 68181.

Court of Criminal Appeals of Texas, En Banc.

May 16, 1984.

Will Gray (on appeal only), Houston, for appellant.

Charles D. Houston, Dist. Atty., Bellville, Robert Huttash, State's Atty., Austin, for the State.

## OPINION

ONION, Presiding Judge.

This is an appeal from a conviction for murder. Punishment was assessed by the jury at 20 years' imprisonment.

At the outset we are confronted with appellant's contention the trial court erred in excluding testimony of oral statements made by him to the arresting officer shortly after the alleged offense.

To place the ground of error in proper perspective, a brief recitation of the facts is necessary.

The appellant was charged with killing Mohammad Abdul al Sabban on February 5, 1978. The killing took place in appellant's apartment in Sealy. Appellant claimed self-defense.

About 11:30 p.m. Vivian Lee Salah, her brother Samer Salah, and the deceased, who was Vivian's fiance, arrived from Houston at appellant's apartment. The purpose of the visit was to collect $400.00 which Samer insisted appellant owed him as a result of a transaction involving a car. There had been a dispute about the validity of the debt.[1]

Samer and Vivian testified appellant Khoury invited them into the apartment and the initial conversation was congenial. Hoping to collect the $400.00, they had concocted a story that Samer owed $400.00 to the deceased, al Sabban, who needed the

---

1. The Salahs were cousins of the appellant. It appears appellant had a Plymouth automobile on which he was making monthly payments. He agreed to sell the vehicle to young Samer for

money now to get his brother out of jail. According to the Salahs appellant Khoury told them he did not have any money and they had to return in the morning after he opened his grocery store. When they protested returning to Houston that night, appellant offered to let the deceased stay in his apartment but stated the Salahs would have to go to a motel. After a while appellant retired to a bedroom. Vivian knocked on the door and told appellant they were all leaving. According to the Salahs appellant emerged from the bedroom with a pistol and began firing at the deceased who was seated on a couch. He told the Salahs to run, and they did.

The police were summoned. They arrested appellant in the apartment complex after he stated he had shot and killed a man. The body was found in appellant's apartment on a couch. Dr. Joseph Jachimczyk, Harris County Medical Examiner, testified the body of the deceased contained five bullets. The cause of death were the two bullets to the head, one to the chest and one to the right shoulder.

Appellant testified that on the Sunday evening in question he had closed his grocery store, gone home and had fallen asleep on the couch. He was awakened by a loud and urgent knocking; that when he opened the door, the deceased al Sabban, whom he had never seen before, pushed his way into the living room demanding the $400.00, and cursed and threatened him if he did not produce the money. Appellant stated he tried to discuss the matter in a civil manner but to no avail due to the aggressive manner of the deceased. He became scared and panicky. Since he only had a sheet draped around him, appellant excused himself and retired to the bedroom to get dressed. There he acquired a .45 caliber pistol and stuck it in his pants belt

under a jacket. As he returned to the living room, appellant related the deceased pulled out a knife and threatened to "cut him in half" and "cut maps on his face." At this time he shot the deceased, and then he told the Salahs to run. Appellant ran to the next apartment and asked the resident to summon the police. When he returned to his apartment, he saw the deceased's knife on the floor where he had fallen and he placed it in the deceased's hand.[2] Thereafter, he drove to the Sealy police station and found it closed.[3] Upon his return to the apartment complex, he encountered Sealy Police Officer Stewart Allen Goodwin and his partner. He took them to the apartment and showed them the body. he was then arrested.

Appellant testified he knew it was wrong to replace the knife in the deceased's hand, but was afraid it would look "bad" for him otherwise. There was no showing that appellant was aware of the .38 caliber revolver which was found by the police concealed under the deceased's jacket.

We now turn to appellant's contention the court erred in excluding his proffered evidence of his oral statements to the police officer at the time of the arrest.

Officer Goodwin was the arresting officer and a State's witness. He testified he responded to the call by appellant's neighbor who had called at appellant's request. The officer went to appellant's apartment but found it locked and received no answer to his door knocking. As he was leaving the apartment complex, a car pulled in and the appellant waived his hand and stopped the officer.

On direct examination Officer Goodwin testified:

"A ... He walked up and said, I shot a man. I killed him in my apartment.

$700.00 down payment with Samer to refinance the vehicle. Samer did not immediately refinance the car, and the appellant, at Samer's request or at the request of Vivian, made several monthly payments on the car. After several months, Samer returned the car to the appellant and demanded the return of his $700.00. He claimed the car had never been in good working order. Appellant testified the car had been abused, the seats torn, the tires worn thin, etc. Appellant gave Samer $300.00 and told him the monthly payments had taken the rest. The dis-

pute continued. Appellant testified he later gave Samer several hundred dollars for a trip to California just to settle the dispute, but Samer returned to Houston and continued to press the claim of debt.

2. The medical examiner testified the hand in question was incapable of holding a knife as a bullet wound had broken most of the bones in the hand.

3. Other evidence supported the fact the police station was closed.

" * * *

"Q  Is he the one that identified himself as George A. Khoury?

"A  Yes, sir.

"Q  Is he the one that said to you, I shot a man. I killed him?

"A  Yes, sir.

"Q  What did you do when you were so advised, Mr. Goodwin?

"A  I told him to open up the apartment. He got his key and opened the apartment, and we went inside."

Later during the direct examination and after a bench conference, the court had the jury removed. The court then asked the witness a few questions. The prosecutor then interrogated the officer:

"Q  Now, after you got—well, after you came into contact with George Khoury did he ever mention to you that knife that was found in the hand of the dead man?

"A  He told me that the victim tried to kill him.

"Q  All right. Did he tell you how the victim had tried to kill him?

"A  With a knife.

"Q  Said, tried to kill him with a knife?

"A  Yes, sir.

" * * *

"Q  Did he go into any detail about how the Defendant (sic) tried to kill him with a knife?

"A  He said, he threatened him with a knife, and I believe said the victim told him if he did not pay him his money—

"THE COURT: I am not going to let you go into that on direct examination. It may be something that might become admissible later on, but I am not going to let you go into it at this time.

"MR. HOUSTON (Prosecutor): Now, I know he just said something about the money, but you are not going to let me talk about the knife?

"THE COURT: No, sir; not at this time.

"MR. HOUSTON: What about the gun? (Found on the deceased.)

"THE COURT: I am not going to.

"THE COURT: How long had he been in custody at the time you asked the questions about the knife?

"THE WITNESS: Just a few minutes, right after I read him his rights, Your Honor.

"THE COURT: All right. I am not going to allow the oral statements at this time."

It is here observed that the appellant did not object, but the court sua sponte ruled the prosecutor could not offer the testimony even though part of the conversation with the officer had already been admitted before the jury.

Later appellant recalled Officer Goodwin and attempted to elicit what he (appellant) had stated to the officer after they entered the apartment and the officer saw the dead body. The court refused to permit such evidence because appellant was under arrest at the time.

Later when the appellant testified, he related that he acted in self-defense in killing the deceased. He was not permitted to testify as to what he told the officer at the time of arrest about the use of a knife by the deceased. Appellant perfected a bill of exception to show that if permitted, he would testify as Officer Goodwin had to the conversation at the time of arrest about the use or threatened use of the knife by the deceased.

Appellant argues that the court admitted the inculpatory portion of his oral statements to the officer but excluded his exculpatory statements made at or about the same time which was a part of the same conversation, etc. He relies upon Article 38.24, V.A.C.C.P., which provides:

"When part of an act, declaration or conversation or writing is given in evidence by one party, the whole on the same subject may be inquired into by the other, as when a letter is read, all letters on the same subject between the same parties may be given. When a detailed act, declaration, conversation or writing is given in evidence, any other act, declaration or writing which is necessary to

make it fully understood or to explain the same may also be given in evidence."

In *Saunders v. State*, 572 S.W.2d 944, 953 (Tex.Cr.App.1978), this court noted:

"Article 38.24, supra, guards against the possibility of distortion that could arise from use of a portion of a conversation or transaction out of its proper context. The thrust of this statute is to allow the trier of fact to understand exactly what occurred, rather than why it occurred. The requirements of the statute are met when the acts or words are put into the context in which they occurred."

In *Westbrook v. State*, 522 S.W.2d 912 (Tex.Cr.App.1975), it was held that in a murder prosecution where the defendant claimed self-defense and the prosecution was allowed to elicit the incriminating portion of defendant's statement to a police officer, it was error not to allow the defense to elicit the portion of the oral confession which contained exculpatory statements concerning the shooting and the error was prejudicial even though defendant was able to present his version of the homicide through his own testimony and that of his nephew.

There the court wrote:

"The circumstances as viewed from appellant's standpoint at the time he shot the deceased were critical to his claim of self-defense. We cannot conclude that the fact he was able to present his version of the homicide through his testimony and that of his nephew at trial rendered harmless the court's error in refusing to admit the exculpatory portion of appellant's oral confession relating to self-defense made shortly after the shooting to Officer Parramore."

■ In the instant case, unlike *Westbrook*, the appellant was not able to present his full version of the homicide. This case then is a stronger case for reversal than *Westbrook*.

■ It would further appear that appellant's statements to the officer were admissible under Article 38.22, V.A.C.C.P., as being res gestae of the offense and the arrest. See *Harryman v. State*, 522 S.W.2d 512 (Tex.Cr.App.1975). See also *Ramos v. State*, 419 S.W.2d 359 (Tex.Cr. App.1967).

The judgment of the trial court is reversed and the cause is remanded.